UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONALD D. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV2111 CDP |
| ) | |
| INTERNATIONAL ) | |
| BROTHERHOOD OF ELECTRICAL ) | |
| WORKERS, LOCAL 1, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Defendant Local 1 of the International Brotherhood of Electrical Workers moves to dismiss Counts I and II of plaintiff Ronald Johnson's complaint.[1] In Count I Johnson claims that Local 1 retaliated against Johnson for engaging in protected union speech and assembly in violation of 29 U.S.C. § 411. In Count II Johnson alleges that Local 1 discriminated against him based on his race in violation of 42 U.S.C. § 1981.[2] I will grant Local 1's motion with respect to Count I of Johnson's complaint, because Johnson has not alleged that he engaged in any relevant union activity. However, I will deny Local 1's motion with respect to

---

[1] During briefing of this motion, Johnson filed a motion to amend his complaint. Local 1 has stated that, if Johnson's motion to amend is granted, its arguments should be applied to Johnson's amended complaint. Because I have found that it is appropriate to allow Johnson to amend his complaint, I will grant Johnson's motion to amend and all discussion of the arguments in this order are directed at Johnson's amended complaint.

[2] Johnson titles Count II of his complaint "Violations of 29 U.S.C. § 1981," however, it is clear from the allegations in his complaint that he is asserting a claim under 42 U.S.C. § 1981.

Count II of Johnson's complaint, because Johnson has alleged facts that could support a claim of racial discrimination.

**Background**

Johnson was a member of Local 1 of the International Brotherhood of Electrical Workers until he was expelled in October of 2010. It is against Local 1's rules for a member to work for a contractor that does not have a contract with Local 1, unless the member has Local 1's permission. In March of 2010, after a period of unemployment,[3] Johnson performed work for a contractor, Building Systems Technology, that did not have a contract with Local 1. Building Systems instead had a contract with a rival union, Local 57. This employment ultimately led to Johnson's expulsion seven months later.

Johnson provides little detail about his work for Building Systems. It is agreed that he performed work for pay at Building Systems, however, Johnson does not claim that he discussed union matters with anyone at Building Systems or that he attended any union related meetings.

After Johnson began his employment with Building Systems, another member of Local 1 filed an internal union charge against Johnson. Local 1 notified Johnson of the charge and provided him with a hearing date. Before the hearing, Johnson requested an extension of the hearing date, which Local 1

---

[3]It is not clear from the record exactly how long Johnson was unemployed.

granted, allowing Johnson to choose the new date of the hearing. Then, in October of 2010, Johnson requested a second extension. Johnson's letter requesting a second extension did not provide a reason why an additional extension was necessary and Local 1 denied the request. In his letter requesting an extension, Johnson also stated that it "is highly suspicious that sanctions are being sought against [Johnson] when Local 1 suggested to Local 57 contractors that they hire non African-American members." In his complaint, Johnson also claims that white members of Local 1 worked for non-contracting employers, but Local 1 chose not to discipline them, and that Local 1's decision to discipline him was based, in part, on the fact that Building Systems is a business owned by an African-American.

Johnson's allegations are based on a series of letters that Local 1 had sent to non-contracting employers encouraging them to hire specific Local 1 members. In July and August of 2010, Local 1 sent letters to employers that had collective bargaining agreements with Local 57, including Building Systems, urging them to hire six specific members of Local 1, but Johnson was not one of the listed members. Johnson alleges that all six of the members recommended in these letters were white. Johnson is African-American.

Local 1 responded to Johnson's letter requesting a second extension by stating that its rules allowed it to discipline members for working for non-

signatory contractors, such as Building Systems, and that three of the six members that Local 1 recommended for hire were African-American. However, Local 1 also assured Johnson that the "Executive Board has an open mind about this issue" that it would "fairly assess the facts, listen to Mr. Johnson," and that it had not pre-judged the matter. Johnson does not claim that he attended the hearing. Local 1 voted to expel Johnson from the union and Johnson did not appeal the decision.

**Analysis**

To survive a motion to dismiss, a complaint must contain enough factual detail to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim is plausible if it allows a reviewing court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Only factual allegations, not legal conclusions, must be accepted as true. *Id.* at 1950; *Twombly*, 550 U.S. at 555.

**1.      Count I - Violations of 29 U.S.C. § 411**

Local 1 seeks to dismiss Count I of Johnson's complaint by arguing that Johnson's employment with Building Systems was not protected speech or assembly under §411. In Count I of Johnson's complaint, he claims that Local 1 violated 29 U.S.C. § 411(a)(2) by infringing his right to engage in protected union speech and assembly. Section § 411 guarantees that:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (West 2011). The speech protected under § 411 is not as broad as the speech protected by the First Amendment. *Hylla v. Transportation Communications Intern. Union*, 536 F.3d 911, 917 (8th Cir. 2008). Instead, the "threshold inquiry in the LMRDA context is whether the speech at issue may be fairly characterized as a matter of *union* concern." *Id.* (italics in original). Section 41(a)(2) "is limited to speech that relates to the general interests of the union membership at large." *Id.* No cause of action arises under § 411(a)(2) for "speech that is of an entirely personal interest." *Id.* at 917-18. To determine whether speech or assembly is protected under § 411(a)(2), courts look to the " content, form, and context" of the activity. *Id.* at 918.

Johnson's employment at Building Systems is not protected speech or assembly under § 411(a)(2). Johnson does not allege that he discussed union matters or engaged in union activities at any point during his employment with

Building Systems or that his employment with Building Systems included anything beyond his work for pay. As a result, Johnson's actions while employed at Building Systems were matters of entirely personal interest and therefore not protected by § 411(a)(2).

Johnson does not dispute this conclusion in his brief. Instead, Johnson argues that Local 1's disciplinary action against him could cause a "chilling effect" on protected speech and assembly in violation of § 411(a)(2). However, not every union disciplinary action has a chilling effect on union members' rights under § 411. *See Hylla*, 536 F.3d at 920. Instead, union disciplinary actions must be caused by, or in response to, some protected activity in order to create a danger of chilling protected activity. *Id.* Here, Johnson does not allege that he engaged in any activity protected activity under § 411(a)(2) and so there is no danger of a chilling effect in this case.

Johnson also argues that Local 1's rule barring him from working for Building Systems is unreasonable. In support, he cites the protections listed in § 411(a)(5), which prohibit a union from taking adverse action against a member without following certain procedures. *See* 29 U.S.C. § 411(a)(5). Section 411(a)(5) requires that, before disciplining a member, the member must be "(A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5).

However, § 411(a)(5) is not relevant to Local 1's motion to dismiss. First, even if Local 1's rule against working for non-signatory contractors were unreasonable, Johnson's actions are still not protected speech or assembly under § 411(a)(2). Second, Johnson does not assert a violation of § 411(a)(5) in his complaint and so a discussion of whether Local 1 violated this section need not be discussed. Third, even if he had asserted a claim under § 411(a)(5), Johnson does not allege that any of the elements listed in § 411(a)(5) are, in fact, true in this case. Instead, the documents that Johnson provided with his brief indicate that the union gave Johnson notice of the charges against him, allowed him time to prepare a defense, and afforded him a full and fair hearing that he chose not to attend.

In addition, even if Johnson's claim under § 411(a)(2) did not fail on the merits, he would be barred from asserting it in this Court because he has failed to exhaust available internal union remedies. Johnson admits that internal union remedies were available and that he chose not to pursue them. Generally, a union member must exhaust internal remedies before challenging a union decision in court. *See* 29 U.S.C. § 411(a)(4); *McPhetridge v. IBEW, Local Union No. 53*, 578 F.3d 886, 889 (8th Cir. 2009) ("Generally, the courts will require an exhaustion of intra-union remedies in the absence of some showing that to do so would be futile or that the remedies are inadequate."). However, Johnson argues that his case qualifies for an exception to the general rule. Specifically, Johnson claims that

Local 1's internal remedies would have been futile because the union had pre-judged his case.[4]

A union member may be excused from exhausting internal remedies if they can show that the internal remedies would be futile or inadequate. *McPhetridge*, 578 F.3d at 889. When determining whether seeking internal remedies would be futile, courts consider:

> [W]hether union officials are so hostile to the employee that he could not hope to obtain a fair hearing, whether the internal union appeals procedures would be inadequate, and whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*McPhetridge v. IBEW, Local Union No. 53*, 578 F.3d 886, 889-90 (8th Cir. 2009) (internal quotations omitted). In addition, "[a] showing of hostility at each level of the appeal process is necessary to establish this exception to the exhaustion requirement." *McPhetridge v. IBEW, Local Union No. 53*, 578 F.3d 886, 90 (8th Cir. 2009).

Johnson has not alleged hostility at each level of the appeal process. Instead, he only alleges facts relating to the initial hearing and so Johnson's claim is barred by his failure to exhaust available union remedies. In addition, Johnson

---

[4]Johnson also argues that exhaustion of internal remedies was unnecessary because Local 1's actions posed a danger of chilling protected speech. As previously discussed, based on the facts pled by Johnson, Local 1's actions in this case do not pose a danger of chilling protected speech.

has not alleged sufficient facts to support a claim of hostility at the initial hearing level. Johnson's claim of hostility relies entirely on Local 1's letter in response to his second request for an extension. However, this letter does not demonstrate hostility or constitute pre-judgment of the issues. Local 1's response is limited to stating the fact that union rules allow it to discipline its members and that Johnson's claim that all of the members that Local 1 recommended for hire were white was incorrect. However, even on these points, the letter carefully and repeatedly stated that Local 1 had not pre-judged the issues and that Johnson would be granted a full and fair hearing. This letter, without any other allegations of hostility, is not sufficient to support a claim that Johnson had no hope of obtaining a fair hearing.[5]

## 2. Count II - Violations of 42 U.S.C. § 1981

Local 1 seeks to dismiss Count II of Johnson's complaint. In Count II, Johnson claims that Local 1 discriminated against him based on his race in violation of 42 U.S.C. § 1981.[6] First, Local 1 argues that Johnson's complaint

---

[5] Johnson also argues that Local 1's refusal to grant an extension is itself evidence that Local 1 was hostile to Johnson. However, Local 1 had, in fact, granted Johnson an extension and allowed Johnson to choose the hearing date. Local 1 only denied Johnson's *second* request for an extension when it was not accompanied by any explanation of why the extension was necessary. As a result, I do not find it plausible that a denial of a second unexplained request of an extension demonstrates hostility, in itself.

[6] Johnson's original complaint also asserted a claim under 42 U.S.C. § 1983 in Count II. However, Johnson did not include this claim in his amended complaint and, consequently, Local 1's arguments to dismiss Johnson's claim under § 1983 are moot.

fails to state a claim under § 1981. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981. To establish a prima facie case of discrimination under § 1981, a plaintiff must show that (1) he is a member of a protected class; (2) defendant intended to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004); *see also Green v. Dillard's, Inc.*, 483 F.3d 533, 538 (8th Cir. 2007).

Johnson has pled sufficient facts to state a claim under § 1981. Local 1 does not dispute that Johnson, an African-American, is a member of a protected class and Johnson has pled facts indicating that Local 1 intended to discriminate based on race. According to Johnson's complaint, Local 1 punished him for actions for which it did not punish white members, it recommended white members for employment for which it did not recommend African-American members, including Johnson, and punished him for working for an African-American contractor when it did not punish other members who worked for white non-signatory contractors. This satisfies Johnson's requirement to provide a short and plain statement demonstrating the second element of his claim –

discriminatory intent.[7] *See Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed. App'x 656, 657-58 (8th Cir. 2009); *Smith v. Ouachita Technical College*, 337 F.3d 1079, 1080 (8th Cir. 2003).

With respect to the third element, Johnson has sufficiently alleged interference with his right to contract. Under § 1981 "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981. "The statute protects the would-be contractor along with those who already have made contracts, and it thus applies to discrimination that blocks the creation of a contractual relationship that does not yet exist." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009) (internal citations and quotations omitted). Courts have recognized that a union's interference with a member's ability to obtain employment by refusing to refer the member to union employers is within the prohibition of § 1981. *See Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 914-15 (7th Cir. 1991).

Here, Johnson alleges that Local 1 refused to refer him to employers because of his race and then expelled him from the union, also because of his

---

[7]Whether there is sufficient evidence to support Johnson's allegations under § 1981 is not at issue on this motion to dismiss. *Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed. App'x 656, 657-58 (8th Cir. 2009)

race, which prevents him from obtaining employment with Local 1 contractors. This is sufficient to state a claim that Local 1 interfered with Johnson's right to contract. As a result, Johnson has alleged a prima facie case under § 1981.

Local 1 also argues that Johnson's claim under § 1981 is prohibited because Johnson failed to exhaust all available internal grievance procedures. Unlike Johnson's claims under § 411, there is no statute expressly allowing unions to require that employees exhaust internal union remedies before filing suit under 42 U.S.C. § 1981. Similarly, there is no precedent directly addressing this issue.

In support of its argument that exhaustion is required, Local 1 relies on *14 Penn Plaza LLC v. Pyett*, 129 S.Ct. 1456 (2009).[8] In *Pyett*, the Court considered whether a union member could bring a claim in federal court under a federal anti-discrimination statute when a collective bargaining agreement specifically required that the member arbitrate such disputes. *Pyett*, 129 S.Ct. at 1464-74. The

---

[8]Local 1 also cites several cases holding that a union member must exhaust union remedies before filing a claim for breach of fair representation under § 301 of the LMRA. *See e.g., Clayton v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am.*, 451 U.S. 679 (1981). However, Johnson does not assert a claim under § 301 of the LMRA and there is significant authority indicating that the requirement that a union member exhaust internal union remedies before filing suit under a federal civil rights statutes is considered under a different standard than a member's requirement to exhaust before filing suit under a federal labor statute. *See e.g. Pyett*, 129 S.Ct. 1456; *Varner v. National Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir. 1996); *Johnson v. Greater Southeast Community Hosp.Corp.*, 951 F.2d 1268, 1276 (D.C. Cir. 1991) ("A private party alleging federal civil rights violations need not pursue internal administrative remedies before pressing a claim in federal court."); *Doe on Behalf of Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 425-26 (7th Cir. 1986); *Donaldson v. Taylor Products Division of Tecumseh Products Co.*, 620 F.2d 155, 158-59 (7th Cir. 1980) (stating that, with respect to internal union grievance procedures, "[w]e agree that there is no exhaustion requirement under either of the Civil Rights Acts.").

Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." *Id.* at 1474.

It is unclear whether it is appropriate to apply the rule in *Pyett* to this case.[9] However, even if the rule in *Pyett* applies, Local 1 has not demonstrated that Johnson is subject to an agreement to exhaust internal remedies before he may file a civil rights claim. Local 1 has not provided a collective bargaining agreement, a union constitution, or any other agreement that clearly and unmistakably requires Johnson to exhaust internal remedies before filing a civil rights claim in court. Local 1 does not even argue that an agreement of this kind exists. Instead, Local 1 simply argues that Johnson must exhaust internal remedies, as a matter of law. This is not the rule stated in *Pyett*, and so, even if *Pyett* applied, Local 1's argument would not bar Johnson's claims under § 1981.

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to file his first amended complaint [#11] is GRANTED and the amended complaint is deemed

---

[9]There are several factual distinctions between *Pyett* and this case, including the fact that this case does not involve an arbitration agreement, that this case involves a union constitution instead of a collective bargaining agreement, and that this case involves § 1981 instead of the ADEA. There is also pre-*Pyett* precedent in this circuit stating that a union member is not required to exhaust internal union grievance procedures before filing suit in court under either § 1981 or Title VII. *See Varner v. National Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir. 1996); *see also Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999) (following *Varner*).

filed as of today.[10]  Plaintiff is reminded of his obligation to promptly obtain service on the newly added defendant.

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [#7] is GRANTED as to Count I and DENIED as to Count II.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2011.

---

[10]In a response to Johnson's motion to amend his complaint, Local 1 also argued for dismissal of Count III of Johnson's amended complaint.  Count III asserts a claim under ERISA for denial of benefits.  Local 1 argues that allowing the amendment would be futile because Johnson has failed to exhaust administrative remedies.  On this record I cannot say that Johnson's claims in Count III are improper, I have allowed the amendment to add Count III.